## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VANCILE ARTHUR WHITE, JR., and
KAYLA DESIREE WHITE,

      Plaintiffs,

      v.

STORMONT VAIL HOSPITAL, et al.,

      Defendants.

Case No. 23-4054-JAR-RES

## REPORT AND RECOMMENDATION

On July 17, 2023, the Court granted Plaintiffs Vancile Arthur White, Jr., and Kayla Desiree White's renewed motions to proceed in forma pauperis ("IFP"). ECF No. 9. In that order, the Court withheld service of process on Defendants until the Court screened the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id.* at 2. Prior to screening the original complaint, the Court provided Plaintiffs with an opportunity to file an amended complaint to address concerns the Court detailed in writing to Plaintiffs. *Id.* at 2-4. On August 7, 2023, Plaintiffs filed a document that the Court is construing as an amended complaint. ECF No. 10.

For the reasons explained below, the Court now recommends that the District Judge dismiss Plaintiffs' federal claims in the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Plaintiffs' amended complaint does not state a federal claim upon which relief may be granted. The Magistrate Judge further recommends that the District Judge decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and dismiss them without prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs' Prior Lawsuits in the District

The Court begins by noting that Plaintiffs generally and Mr. White specifically have a history of filing pro se cases in the District. This lawsuit is the second case filed in this District by both Plaintiffs. *See White v. Azria Health of Olathe, Kansas*, 18-4142-HLT-JPO ("*Azria*"). As the district court stated in summarizing that case: "Although the exact nature of the allegations is difficult to decipher, the claims appear to stem from an underlying state probate proceeding . . . ." *Id.* at ECF No. 48 at 2 (May 3, 2019). "Plaintiffs allege their due process rights were violated by the following legal actions taken during the course of those state court proceedings: the appointment of a guardian and conservator for Plaintiff Dorothy White, the eviction of Plaintiffs Vancile White and Kayla White from a home owned by Plaintiff Dorothy White, and the state court's authorization of the sale of that property." *Id.*[1] The district court dismissed the case for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine but noted various other defects as well. *See id.* at 3-9.

Judgment was entered in the *Azria* case on May 16, 2019. *Id.* at ECF No. 49. Plaintiffs, however, appear to believe that there are overlapping factual and/or legal issues in this pending lawsuit and in the *Azria* lawsuit because Plaintiffs filed what the Court is construing as an amended complaint in this lawsuit and filed the same document in the *Azria* case. *See id.* at ECF No. 52. On August 31, 2023, the District Judge in *Azria* construed the document as a motion for reconsideration and denied the motion, finding that none of the new factual allegations provide a basis to set aside the previous judgment. *Id.* at ECF No. 53. That case remains closed.

---

[1]    Dorothy White is not named in this lawsuit as a plaintiff. *See* ECF No. 10 at 1 (case caption for amended complaint includes only Vancile Arthur White, Jr., and Kayla D. White).

Mr. White has filed two other cases in this District in which he is the sole pro se Plaintiff. In *White v. Alltran Education, Inc.*, 20-4009-KHV-ADM, Mr. White alleged violations of the Fair Debt Collection Practices Act and Federal Trade Commission Act. On October 2, 2020, the court granted the defendants' motion to dismiss for failure to state a claim and judgment was entered. *Id.* at ECF Nos. 37-38.

On July 10, 2023, one week after Plaintiffs filed this lawsuit, Mr. White filed *White v. Snider*, 23-4055-KHV-RES, which also was assigned to the undersigned Magistrate Judge. Liberally construing that complaint, Mr. White appeared to assert federal discrimination claims and state law claims for certain auto repair work to be performed by the defendants on his vehicles. *See generally id.* at ECF No. 1. The undersigned Magistrate Judge issued a Report and Recommendation in that case recommending that the District Judge (1) dismiss Mr. White's federal claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because his complaint does not state a claim upon which relief may be granted; and (2) decline to exercise supplemental jurisdiction over his remaining state law claims and dismiss them without prejudice. *Id.* at ECF No. 7 (Aug. 17, 2023). The District Judge adopted that Report and Recommendation in full, *id.* at ECF No. 10, and judgment was entered on September 5, 2023. *Id.* at ECF No. 11.

### B. This Current Lawsuit

On July 3, 2023, Plaintiffs filed their original complaint in this case. ECF No. 1. The original complaint is 48-pages, single-spaced, and 35 additional pages of exhibits were filed with the complaint. *See generally id.* Along with the complaint, Plaintiffs filed a motion to proceed IFP. ECF No. 3. The Court denied Plaintiffs' original motion to proceed IFP without prejudice to refiling because Plaintiffs failed to provide the required information to ascertain the financial situation of either Plaintiff. ECF No. 5. On July 12, 2023, Plaintiffs filed new affidavits, which

the Court construed as renewed motions. ECF Nos. 7-8. The Court granted Plaintiffs' renewed motions finding that their financial situation warranted waiving the filing fee. ECF No. 9. The Court, however, did not direct service of process on Defendants at that time because the complaint would be screened for merit pursuant to 28 U.S.C. § 1915(e)(2)(B). *Id.* at 2.

In the Court's order granting Plaintiffs' motion to proceed IFP, the Court put Plaintiffs on notice that their 48-page, single-spaced complaint and the 35 pages of supporting exhibits violated Rule 8(a) because the complaint did not contain a short and plain statement showing that they are entitled to relief. *Id.* at 2-3. The Court stated that the "complaint vaguely and sporadically references unspecified civil rights law, the 14th Amendment, and civil rights violations with no tie to Plaintiffs themselves or how each Defendant allegedly committed these violations against each Plaintiff." *Id.* at 3. In an effort to allow Plaintiffs to cure these deficiencies, the Court provided Plaintiffs with the opportunity to file an amended complaint on or before August 11, 2023, that complied with Rule 8's requirement for a short and plain statement and to clarify the factual and legal claims by each Plaintiff against each Defendant. *Id.*

On August 7, 2023, Plaintiffs timely filed an amended complaint. ECF No. 10.[2] Although the 9-page, double-spaced amended complaint is shorter, it is still difficult to decipher exactly what claims Plaintiffs are asserting against each named Defendant. Confusingly, in the case caption of this amended complaint, it states: "Case No: 23-4054-JAR-RES Including case no: 5:18-cv-04142-HLT-JOP current in **:MOOT:** to be now refiled also. motion to reconsider." ECF No. 10 at 1 (all

---

[2]    Because "[t]he amended complaint, as the operative complaint, supersedes the original complaint's allegations" the Court will screen only Plaintiffs' amended complaint. *May v. Segovia*, 929 F.3d 1223, 1229 (10th Cir. 2019). Because Plaintiffs are proceeding pro se, the Court nonetheless reviewed the original complaint as part of the screening process. Even if the original complaint were still the operable complaint, none of the information contained in the original complaint changes or alters the conclusions reached in this Report and Recommendation.

spelling and emphasis original).  Because of the reference to the *Azria* case in the caption, this same document was filed in the *Azria* case, a case in which a judgment was entered on May 16, 2019.  *See Azria*, ECF Nos. 49, 52.

Highly summarized, the amended complaint appears to allege conduct "starting of the violations some 5 years plus ago."  ECF No. 10 at 2.  Plaintiffs allege that Plaintiff Kayla Desire White has suffered from various medical conditions, including COVID-19, and has received poor medical care, including a delay in receiving treatment for a UTI.  *Id.* at 4.  It is unclear where any specific poor medical care occurred because Plaintiffs do not allege what care occurred at Defendant Stormont Vail Hospital and what care occurred at Defendant Saint Francis Hospital.  *See, e.g., id.* at 4 (alleging poor care "while in hospital care at hospitals").  At some point, after October 29, 2022, Plaintiffs appear to allege that Ms. White was involuntarily committed.  *Id.* Plaintiffs appear to allege that she was transported to the Osawatomie State Mental Hospital by the Topeka Police Department but was discharged in "November 2023."  *Id.*  The Court assumes that the 2023 year is a typographical error and will treat the allegation as November 2022. Plaintiffs allege that "[t]o be addmitted at several involuntary admissions to several Health Care Facilities in Kansas being medicated mistreated and manhandled against the laws in violated acts that are in violation of the American people's with Disabilities Act and civil liberty rights of citizens."  *Id.* at 4-5 (spelling and capitalization original).

Plaintiffs also allege that Defendants Stormont Vail Hospital and Saint Francis Hospital (collectively the "Hospital Defendants") were "plotting" against Mr. White, made untrue and slanderous rumors about him, and were racially biased against him.  *Id.* at 5-6.  This, in turn, resulted in a series of unspecified investigations by state agencies and Plaintiffs allege they received unequal treatment from the Kansas Department for Children and Families, which is a

named Defendant. *Id.* Plaintiffs additionally allege that at some point, Mr. White was denied visitation rights and was unjustly kicked out of an unspecified hospital during visitation hours. *Id.* at 6.

Plaintiffs mention that Dorothy White, who is not a named plaintiff, was involuntarily transferred by Johnson County officials to an unspecified location. *Id.* at 6-7. Plaintiffs appear to seek review of lower state court decisions appointing a conservator for Dorothy White and cite to the *Azria* lawsuit. *Id.* Plaintiffs state that they recently learned that the conservator appointed for Dorothy White was removed due to fraud and elder abuse. *Id.* at 2-3.

Plaintiffs seek $2 million in compensatory damages, seek $2 million in punitive damages, and demand a jury trial. *Id.* at 8. Plaintiffs also seek $3 million in damages in the *Azria* lawsuit for a total of $7 million for both lawsuits. *Id.* Plaintiffs seek these damages for mental anguish, mental agony, and mental distress. *Id.* at 7. Although unclear, the amended complaint appears to allege that Plaintiffs are entitled to these damages because of various constitutional and civil rights violations by state officials pursuant to 42 U.S.C. § 1983. *See id.* at 2 (stating "the actions are in violated the federal and a security Nation law and may face retaliatory action when reporting these cases describe of discrimination and unequal treatment based on race all combined desperate treatment are in violation of title VII of the Civil Rights Act of 1964 and other Constitutional Amendments." (all language original)).

## II.   DISCUSSION

The amended complaint, while significantly shorter, does not bring clarity as to the legal claims Plaintiffs are attempting to assert or the facts that support such claims. Throughout the amended complaint, Plaintiffs make vague and sporadic references to unspecified civil rights laws and alleged violations. Liberally construing Plaintiffs' amended complaint, it appears Plaintiffs are attempting to assert potentially three federal claims: a disability discrimination claim under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; a race discrimination claim; and a 42 U.S.C. § 1983 claim. The remainder of Plaintiffs' claims arise under state law. Those appear to include medical malpractice, defamation, and fraud in relation to Ms. White's alleged medical mistreatment and potential involuntary transfers.

The Court first addresses the sufficiency of Plaintiffs' potential federal claims.

### A.    Standards for Screening Plaintiffs' Amended Complaint

Because Plaintiffs proceed IFP, their complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute authorizes the Court to dismiss a case at any stage if it determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.*; *see also Salgado-Toribio v. Holder*, 713 F.3d 1267, 1270 (10th Cir. 2013) (screening applies to all litigants proceeding IFP). The screening process "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams,* 490 U.S. 319, 327 (1989).

In screening the amended complaint to determine whether it states a claim, the Court applies the same standard it applies to Fed. R. Civ. P. 12(b)(6) motions to dismiss. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 667 (quoting *Twombly*, 550 U.S. at 556). In applying this standard, the Court need not accept as true legal conclusions couched as factual allegations. *Id.* Although the plausibility standard does not require detailed factual allegations, it requires more than simply pleading "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Because Plaintiffs proceed pro se, the Court liberally construes their complaint. *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006). But in doing so, the Court does not "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Rather, Plaintiffs still bear "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

Plaintiffs' federal claims appear to concern allegations of both race and disability discrimination, and alleged violations of § 1983. But the amended complaint is virtually void of any facts pertaining to these claims and as such, Plaintiffs have failed to plausibly allege any cognizable federal claim. The Court already allowed Plaintiffs the opportunity to amend, and their amended claims remain unclear and void of any factual support. The Court addresses each discernable attempted federal claim below.

### B.    Claims Related to Non-Party Dorothy White

While Dorothy White was a named plaintiff in the *Azria* lawsuit, she is not a named plaintiff in this lawsuit. She is not listed in the case caption in either the original complaint or in

the amended complaint.  *See* ECF No. 1 at 1; ECF No. 10 at 1.  She did not sign either complaint.  ECF No. 1 at 6; ECF No. 10 at 9.  While Mr. White and Kayla White moved for and were granted IFP status, ECF No. 9, Dorothy White did not move for IFP status in this lawsuit, and she has not paid a filing fee.  As reflected on the docket, she has never appeared in this lawsuit.

To the extent Plaintiffs are attempting to use the amended complaint to raise claims on behalf of non-party Dorothy White, the complaint suffers from the same standing defects as Plaintiffs' complaint in *Azria*.[3]  As the *Azria* court found, Dorothy White has been deemed incompetent by the State of Kansas and cannot represent herself.  *Azria*, ECF No. 48 at 6.  The *Azria* court held that Plaintiffs are not attorneys and cannot assert claims "that rest on the legal rights and interests of [ ] Dorothy White."  *Id.* at ECF No. 48 at 7.  There are no factual or legal assertions of any kind in the amended complaint that provide a new basis for either Plaintiff to assert claims on behalf of Dorothy White.  Because Plaintiffs lack standing to assert claims on behalf of Dorothy White, the Court disregards the portions of the amended complaint that may be alleging claims on behalf of Dorothy White.

### C.    Plaintiffs' Disability Discrimination Claim

The amended complaint alleges that Defendants' actions are in "violation of the American people's with Disabilities Act."  ECF No. 10 at 4.  From the face of the complaint, it is not clear which Plaintiff is asserting an ADA claim against which Defendant.  The majority of the references to the ADA appear under the section of the amended complaint titled, ":Plaintiff: Kayla Desiree White."  *Id.*  As far as the Court can discern, the only sentence that substantially addresses the

---

[3]       The *Azria* court found additional jurisdictional defects in the claims asserted on behalf of Dorothy White.  *See Azria*, ECF No. 48 at 4-6 (holding that the "[t]he Court may not consider Plaintiffs' challenges to state court proceedings . . . in accordance with *Rooker-Feldman* for lack of jurisdiction.").

ADA claim appears to apply only to Ms. White. *Id.* at 4-5 ("To be addmited at several involuntary admissions to several Health Care Facilities in Kansas being medicated mistreated and manhandled against the laws in violated acts that are in violation of the American people's with Disabilities Act and civil liberty rights of citizens lawful").

It is equally unclear which Defendant or Defendants allegedly violated the ADA. Plaintiffs cite to treatment "while in hospital care at hospitals," *id.* at 4, which could mean that Plaintiffs are asserting this claim against both Hospital Defendants. Plaintiffs additionally assert the "abuse of power treatments of City of Topeka police department and Department of Children's and family (APS) adult protection services investigations under color of law," *id.*, which could mean that Plaintiffs are asserting this claim against the Department for Children and Families and the City of Topeka.

In allowing Plaintiffs to amend their complaint, the Court was clear in its order that to comply with Rule 8(a), Plaintiffs' amended complaint "'must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right [Plaintiffs] believe[ ] the defendant violated.'" ECF No. 9 at 2 (quoting *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007)). The amended complaint continues to violate Rule 8(a), which is reason enough to recommend dismissal of the amended complaint. But liberally construing the amended complaint, the Court interprets the amended complaint as raising ADA claims on behalf of Ms. Kayla White only and that she asserts this claim against all Defendants. Even with this liberal construction, Plaintiffs fail to state a claim under the ADA.

To begin, it is unlikely the ADA could apply in this case. The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered

by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III."[4]  *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).  As discussed below, Plaintiffs do not allege claims that fit within any of these categories.

Title I of the ADA does not apply because Plaintiffs do not plead that Ms. White—or even Mr. White—was ever an employee of or had any employment relationships with any Defendant. At most, Plaintiffs allege treatment from the Hospital Defendants and interactions with the Department for Children and Families and the Topeka Police Department, interactions that are not employment related.

With regard to Title II, Plaintiffs appear to allege that Ms. White was misdiagnosed and that she was involuntarily transported to a mental hospital as a result of a failure to diagnosis and treat certain underlying physical conditions.  ECF No. 10 at 4 (alleging "[d]enial and delays in early detention of timely treatment for UTI infection misdiagnosis negligence and denial and not giving mandatory daily medication" and that "all along it was infections that caused the problems of illnesses of admitted patient").  Even accepting these facts as true, they cannot state an ADA claim under Title II.

Title II of the ADA only prohibits "public entities" from discriminating against disabled individuals.  *See* 42 U.S.C. § 12131(1) ("public entity" is defined broadly to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality

---

[4]    The Court does not discuss Title VI or Title V of the ADA because even broadly construing the amended complaint, (1) Defendants are not telecommunication companies required to provide services to accommodate individuals with hearing disabilities, 47 U.S.C. § 225; and (2) there is no allegation that Defendants interfered with Plaintiffs' attempt to exercise an unspecified right under the ADA or retaliated against Plaintiffs when they asserted their rights under the ADA, 42 U.S.C. § 12203.

of a State or States or local government"); *McNeal v. Henry*, No. 17-CV-04008-DDC-KGS, 2017 WL 2345625, at *4 (D. Kan. May 30, 2017) ("'Only public entities are subject to Title II' of the ADA." (quoting *City & Cty, of S.F. v. Sheehan*, 575 U.S. 600, 610 (2015))).   As discussed throughout this Report and Recommendation, there is nothing in the amended complaint to suggest that the Hospital Defendants are public entities.   As such, even if Plaintiffs could allege a valid Title II ADA claim, it could proceed against only the City of Topeka and/or the Department for Children and Families.

As to the City of Topeka and the Department for Children and Families, Plaintiffs do not allege Ms. White was excluded from participation in or denied benefits of a service, program, or activity of the Topeka Police Department or the Department for Children and Families.   Perhaps Plaintiffs are arguing that Ms. White was denied adequate medical treatment because of an alleged disability.   Even if that is their argument, "[m]edical malpractice, alone, does not provide the basis for a claim under the ADA." *McNeal*, 2017 WL 2345625, at *5; *see also Moore v. Prison Health Servs., Inc.*, 201 F.3d 448 (10th Cir. 1999) ("These statutes afford disabled persons legal rights regarding access to programs and activities enjoyed by all, not a general federal cause of action for challenging the medical treatment of their underlying disabilities."); *Edmisten v. Kansas*, No. 08-3091-SAC, 2008 WL 4540460, at *5 (D. Kan. Oct. 9, 2008) (the plaintiff's "claim under the ADA is nothing more than a challenge to his medical care and therefore fails to state a claim for relief under the ADA.").   And while the Supreme Court has held that Title II applies to actions where prisoners are denied benefits by the institutions that hold them on the basis of a disability, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998), Plaintiffs do not point to any caselaw, and the Court has been unable to find any, suggesting that Title II creates a cause of action for individuals who are involuntary committed or transferred who seek to challenge the quality—

not the denial—of the medical treatment they received.  Moreover, the Court is unable to find any caselaw suggesting that even if such a cause of action existed, it could be brought against the City of Topeka and/or the Department for Children and Families.

Finally, as to Title III, the Court notes that Plaintiffs seek only monetary damages as relief, which are not an available remedy to individuals under Title III.[5]  As such, it is unlikely that the ADA applies to Plaintiffs' allegations against Defendants.

But even if the ADA were to apply, Plaintiffs have not alleged that Ms. White is disabled as defined under the ADA.  The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C § 12102(1).

The amended complaint does not plead that Ms. White is disabled as defined by Congress, meaning her claim does not fall under the ADA.[6]  Broadly construing Plaintiffs' complaint, Plaintiffs might be alleging that Ms. White's medical conditions that were the basis for her involuntary commitment constitute a disability.  Plaintiffs appear to allege that her physical

---

[5]    *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) ("Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief."); *Riggs v. CUNA Mut. Ins. Soc'y*, 171 F. Supp. 2d 1210, 1215 (D. Kan. 2001), *aff'd sub nom. Riggs v. Cuna Mut. Ins. Soc.*, 42 F. App'x 334 (10th Cir. 2002) ("The court agrees with defendant that Title III does not permit the recovery of monetary damages and, therefore, concludes that plaintiff's allegations relating to Title III, to the extent she has outlined them in her briefing, fail to state a claim upon which relief can be granted.").

[6]    *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999) (reversing the Court of Appeals for several reasons, but "most significantly, the Court of Appeals did not pay much heed to the statutory obligation to determine the existence of disabilities on a case-by-case basis. The Act expresses that mandate clearly by defining 'disability' with respect to an 'individual'"); *Blakely v. Cessna Aircraft Co.*, 256 F. Supp. 3d 1169, 1173 (D. Kan. 2017) ("To establish a prima facie case of discrimination under the ADA, [the plaintiff] must show (1) [they are] disabled as defined under the ADA . . . .").

symptoms were misdiagnosed as mental health concerns.  ECF No. 10 at 4 (alleging "misidentifying misdiagnosis of a physical or a mental psychiatrist medical cases when all along it was infections that caused the problems of illnesses of admitted patient was then involuntarily shipped to a Osawatomie State mental hospital for two weeks evaluation another misdiagnosis and enough and malpractice").  But even if that constitutes a disability, the allegation is a medical malpractice claim, not a federal discrimination claim based on a disability.

It is also possible that Plaintiffs are alleging Defendants violated the ADA because Defendants' decision to involuntarily commit or transfer Ms. White was based on a stereotype about her unspecified disability.  The amended complaint is void of any facts to support this argument because Plaintiffs do not allege (1) when, how, or why Ms. White was involuntarily committed or transferred; (2) who made the decision to involuntarily commit or transfer her; or (3) what possible improper motive/stereotype Defendants used in deciding she should be involuntarily committed or transferred.

Ultimately, even if Plaintiffs' amended complaint included such facts, courts have specifically rejected attempts to bring an ADA claim based on these types of facts because it would give "plaintiffs an almost unfettered ability to re-frame claims of medical malpractice into federal claims of discrimination on the basis of disability."  *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 233-34 (2d Cir. 2014).  Instead, "an actionable claim of discrimination in the medical treatment context under the ADA" requires the plaintiff to allege "defendants made treatment decisions based on factors that are 'unrelated to, and thus improper to consideration of' the inquiry in question."  *Id.; see also Bryant v. Steele*, 25 F. Supp. 3d 233, 244 (E.D.N.Y. 2014) (court found that the plaintiff did not plausibly state a claim under the ADA because there were no allegations that the defendants "forcibly hospitalized him on the basis of considerations that were 'unrelated

to' or 'improper to consideration of' the likelihood that he posed a danger to himself or others."). Here, Plaintiffs allege that her treatment decisions were based on her medical symptoms, which manifested as mental health challenges. There are no factual allegations that the medical care she received was based on factors unrelated to her care and treatment or her physical and mental health.

The Court has liberally construed Plaintiffs' amended complaint and has attempted to discern any plausible claim that Plaintiffs may be raising under the ADA. The Court recommends dismissal of Plaintiffs' ADA claim for failure to state a claim because Plaintiffs cannot prevail on the facts they have alleged, and the Court already gave Plaintiffs the opportunity to amend and add greater clarity to their claim, which did not cure the legal and factual problems in the original complaint.

### D.  Plaintiffs' Race Discrimination Claim

Plaintiffs' race discrimination claim suffers from similar defects. On the face of the amended complaint, there are no allegations regarding the race of either Plaintiff, which is fatal to any race discrimination claim.[7] It is unclear if the race discrimination claim is brought on behalf of both Plaintiffs or just Mr. White. The only substantive reference to race in the amended complaint is in the section that has the heading for Mr. White. ECF No. 10 at 5. No racial allegations exist in the section that has the heading for Ms. White and there are no factual allegations related to Ms. White's race in the amended complaint. As for which Defendant

---

[7]     "'In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII.'" *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)). "'To make out a prima facie case of discrimination, [the plaintiff] must demonstrate (1) membership in a protected class . . . .'" *Id.* (quoting *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)).

allegedly committed this race discrimination, it is unclear which Defendants allegedly discriminated against Plaintiffs based on their race, when this occurred, or how this occurred.

Again, Plaintiffs' amended complaint violates Rule 8(a) for the same reasons Plaintiffs' ADA claim violates Rules 8(a). The Court nonetheless liberally construes the amended complaint as alleging race discrimination claims by Mr. White only against all Defendants. Even with this liberal construction, the amended complaint fails to state a race discrimination claim.

At most, the amended complaint asserts race discrimination in two contexts. First, Plaintiffs allege that hospital staffers and state employees made allegedly "untrue defamation and slanderous rumors comments that were in fact. Negative harmful irresponsible unequally racially biased" and that these statements "started and set off unequal treatment from the adult protection services . . . ." *Id.* at 5 (language original). Second, Plaintiffs state the following:

> Intrusive visits of multiple harassment events from Adult Protective Services and combining them in Topeka Police Department rifles racial profiling investigators targeted combined combination defendants use that D.O.J. has sued and banned these kind of discriminatory tactics.

*Id.* (punctuation and capitalization original).

There are no factual allegations that support what these statements were, whether they actually were based on Mr. White's race, when any such statements were made, or who made such statements. With regard to the racial profiling, there similarly are no facts that support this claim or explain why any alleged racial profiling bears any relevance to Ms. White's medical care.

The amended complaint does not specify what type of race discrimination claim Mr. White alleges, including whether it arises under state or federal law, or whether the allegation is simply part of Plaintiffs' other claims. It is additionally unclear what was the racially motivated conduct by each Defendant. Assuming Plaintiffs' claims arise under federal law, Plaintiffs, at a minimum,

must plead that Defendants' conduct was motivated by some racially discriminatory animus. *See, e.g., Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010) ("In order to state a[ ] race-based equal protection claim, a plaintiff must sufficiently allege that the defendant was motivated by racial animus."); *Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 815 (10th Cir. 2004) (a plaintiff who brings a claim pursuant to 42 U.S.C. § 1985 must show "(1) a conspiracy, motivated by racially-discriminatory animus . . . "). Without any factual support, Plaintiffs' conclusory allegations of racial motivation are "insufficient to state a claim upon which relief can be granted." *Green*, 401 F. App'x at 376. Although the Court must liberally construe the amended complaint, it is not the Court's role to "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173 (10th Cir. 1997).

In sum, the Court cannot determine whether Mr. White is attempting to assert a race discrimination claim, under what legal authority the claim arises, or what facts support the claim. The amended complaint also fails to include specific facts to show that Mr. White is a member of a protected class or that Defendants' conduct was motivated by discriminatory animus. Again, the Court recommends dismissal of Plaintiffs' race discrimination claim because Plaintiffs cannot prevail on the facts they have alleged, and the Court already gave Plaintiffs the opportunity to amend and add greater clarity to their claim, which did not cure the legal and factual problems in the original complaint.

### E.      Plaintiffs' 42 U.S.C. § 1983 Claims

To state a § 1983 claim, Plaintiffs must plausibly allege "that they have been deprived of a right secured by the Constitution and the laws of the United States." *Johnson v. Rodrigues*, 293 F.3d 1196, 1201-02 (10th Cir. 2002) (internal quotation marks omitted) (quoting *Flagg Bros., Inc.*

*v. Brooks*, 436 U.S. 149, 155 (1978)).  Plaintiffs additionally must allege that the "'deprivation was committed by a person acting under color of state law.'" *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Like Plaintiffs' other claims, it is unclear if the § 1983 claim is brought on behalf of both Plaintiffs or just one of the Plaintiffs.  There is no reference to § 1983 in the section that has the heading for Ms. White.  There are references to § 1983 in the section with Mr. White's heading. Towards the end of the amended complaint, however, there is catch-all language that arguably could be interpreted to reflect that both Plaintiffs assert § 1983 claims.  *See, e.g.,* ECF No. 10 at 7 ("Constitutional Grounds for 1983 Civil rights complaint claims . . . penalties designed by 42 USC a 1983 civil rights complaint violations"), 8 ("all theses plaintiffs automate Are entitled to 42 USCA 1983 relief for damages . . . and 42 USCA 1983 for damages for demand jury trials for violations damages during far to many multiple series of plaintiffs Civil rights abuses incidents") (spelling, capitalization and punctuation original).  It is equally unclear whether Plaintiffs bring this claim against all four Defendants.

The amended complaint violates Rule 8(a) for the same reasons Plaintiffs' ADA and race discrimination claims violate Rule 8(a).  But the Court will liberally construe the amended complaint as both Plaintiffs alleging claims under § 1983 against all Defendants.  Even if the amended complaint contained the required facts to allege these claims, which it does not, Plaintiffs have not plausibly alleged that either Hospital Defendant constitutes a state actor or acted under color of state law, which is fatal to Plaintiffs' claims against these two Defendants.  This leaves at most the possibility of § 1983 claims against Defendants City of Topeka and the Department for Children and Families, which also fail as discussed below.

1.    **Plaintiffs' § 1983 Claim Against the Department for Children and Families**

Assuming Plaintiffs are asserting a § 1983 against the Department for Children and Families, such a claim fails because the Department is immune from such actions. "Eleventh Amendment immunity bars damages actions against a state in federal court, even by its own citizens, unless the state waived that immunity." *Lewis v. Kansas Dep't of Revenue*, 380 F. Supp. 2d 1211, 1212 (D. Kan. 2005), *aff'd*, 181 F. App'x 732 (10th Cir. 2006) (citing *Sturdevant v. Paulsen,* 218 F.3d 1160, 1164 (10th Cir. 2000)). This immunity extends to state agencies such as the Department for Children and Families. *See Flagg v. Kansas Dep't of Child. & Fam. Servs.*, No. 21-1281-JAR-GEB, 2022 WL 1421541, at *3-4 (D. Kan. May 5, 2022) (holding that the Court lacked subject matter jurisdiction over the Department for Children and Families because there was no waiver or abrogation of sovereign immunity); *Green v. Kansas Dep't for Child. & Fams.*, No. 17-2551-JAR-JPO, 2017 WL 6619324, at *2 (D. Kan. Dec. 28, 2017) (same).

Liberally construing Plaintiffs' amended complaint, Plaintiffs seek millions of dollars in compensatory and punitive damages against the Department for Children and Families under § 1983 for alleged constitutional violations. *See generally* ECF No. 10. Plaintiffs do not seek injunctive relief, nor are they suing state officials in their official capacities for ongoing violations of federal law. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996) (noting the exception to Eleventh Amendment immunity for suits "against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985))). The Supreme Court has held that nothing in § 1983 abrogates Eleventh Amendment immunity because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Because state agencies are absolutely immune to suits for money damages under the Eleventh Amendment, Plaintiffs fail to state a § 1983 claim against the Department for Children and Families. *See Green*, 2017 WL 6619324, at *2 (dismissing the plaintiff's § 1983 claims against the Department for Children and Families "under the doctrine of sovereign immunity").

### 2.    Plaintiffs' § 1983 Claim Against the Hospital Defendants

There is nothing on the face of the amended complaint to indicate that the Hospital Defendants are each state actors, as opposed to privately owned businesses. Even if the medical treatments ultimately were used as part of the involuntary commitment process, which is not directly alleged, that is insufficient to transform a private individual or entity into a state actor. *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) (holding that a private medical professional providing medical information that was used by a judge in making a commitment decision did not transform the private medical professional into a state actor). "Every Circuit to consider whether a private health care professional or private hospital engaged in state action by virtue of their role in an involuntary commitment authorized by state law have determined that the hospitals and physicians in question are not state actors." *Markman v. Lasota*, No. CV 15-3335-DDP (KS), 2015 WL 13908096, at *8 (C.D. Cal. Nov. 25, 2015) (collecting Circuit cases).

The question then becomes whether the amended complaint alleges that the Hospital Defendants acted under color of state law. A private party can act under the color of state law if the party "'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Johnson*, 293 F.3d at 1202 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

The amended complaint does not set forth any facts suggesting that the Hospital Defendants acted under the color of state law in providing medical treatment for Ms. White. Even

if Plaintiffs alleged that the Hospital Defendants directly participated in the involuntary commitment procedures or proceedings—which there are no factual allegations that they did—"the use of a state procedure does not become state action simply because the person using the procedure is a licensed professional such as a physician." *Scott*, 216 F.3d at 906 (physician's submission of petition in support of civil commitment did not make the physician a "state actor" for the purpose of a § 1983 claim).

The Tenth Circuit has found that a private actor becomes a state actor for the purpose of a § 1983 claim challenging an involuntary commitment if the commitment was the result of the State's exercise of "coercive power." *Pino v. Higgs*, 75 F.3d 1461 (10th Cir. 1996). But there are no facts in the amended complaint suggesting that the Department for Children and Families or the City of Topeka forced, compelled, or even encouraged the Hospital Defendants to involuntarily commit Ms. White, much less any specific role played by each Hospital Defendant in the involuntary commitment process. *See Wittner v. Banner Health*, 720 F.3d 770, 776 (10th Cir. 2013) ("When the state regulates a private medical facility but does not mandate its employees to make particular decisions regarding patient care, '[w]e cannot say that the State . . . is responsible for the physician's decision.'" (quoting *Pino*, 75 F.3d at 1466)).

Because Plaintiffs' amended complaint does not include any facts alleging this coercive power or concerted action, Plaintiffs fail to state a § 1983 claim against either Hospital Defendant. *Scott,* 216 F.3d at 907 ("When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." (citation omitted)).

### 3.    Plaintiffs' Potential *Monell* Claim

Because Plaintiffs name the City of Topeka via the Topeka Police Department as a Defendant, Plaintiffs may be alleging a *Monell* claim.  In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held that an injured plaintiff may hold a municipal or local government entity liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  436 U.S. 658, 694 (1978).  A private entity also may be held liable under *Monell* if the private entity "adopted an 'official municipal policy of some nature,' that was the direct cause or moving force behind the constitutional violations."  *Walker v. Corizon Health, Inc.*, No. 17-2601-DDC-KGG, 2022 WL 1063723, at *31 (D. Kan. Apr. 8, 2022), *reconsideration denied*, No. 17-2601-DDC-KGG, 2022 WL 1521930 (D. Kan. May 13, 2022) (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215-16 (10th Cir. 2003)).  Regardless of which Plaintiff may be asserting this claim, it also fails.

A *Monell* claim has three requirements: "(1) an underlying injury to a constitutional right of the plaintiff; (2) a municipal policy or custom, and (3) a direct causal link between the policy or custom and the injury."  *Calvo-Pino v. Weidl*, 514 F. Supp. 3d 1321, 1326 (D. Kan. 2021).  Plaintiffs plead none of these requirements or any facts to support the elements of a *Monell* claim.  Plaintiffs do not allege an underlying injury to a constitutional right and the Court is unable to discern one from the amended complaint.[8]    As indicated throughout this Report and

---

[8]    For example, Mr. White alleges that unnamed individuals with the Topeka Police Department may have made slanderous or defamatory remarks.  While such remarks could potentially constitute a state law cause of action, they do not rise to the level of a § 1983 claim. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."); *Angel v. Torrance Cnty. Sheriff's Dep't*, 183 F. App'x 707, 708 (10th Cir. 2006) ("defamation alone does not amount to an actionable § 1983 claim").

Recommendation and similar to the defects noted by the Court regarding Plaintiffs' original complaint, the amended complaint "makes collective and conclusory allegations unsupported by specific factual allegations." *Fullen v. City of Salina, Kansas*, No. 21-4010-JAR-TJJ, 2021 WL 4476780, at *11 (D. Kan. Sept. 30, 2021).[9]  "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) (emphasis original)).  As written, the Court is unable to "isolate the precise constitutional violation with which [Defendants are] charged[,]" *Baker v. McCollan*, 443 U.S. 137, 140 (1979), and, as previously stated, the Court will not supply additional facts to round out Plaintiffs' amended complaint or construct a legal theory on their behalf to create a constitutional injury that Plaintiffs themselves cannot articulate in a short and plain statement. *Whitney*, 113 F.3d at 1173-74.

Even if Plaintiffs did properly allege an underlying injury to a constitutional right, they do not allege that the City of Topeka or an official with policymaking authority has enacted or maintained a policy that injured them "with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).  Plaintiffs have not alleged that the Hospital Defendants adopted or enacted such a

---

[9]        *See, e.g.,* ECF No. 10 at 4 ("until discharge from Osawatomie State Mental Hospital which then set off several along with constitutionality unequal intruding abuse of power treatments of City of Topeka police department and Department of Children's and family (ASP) adult protection services investigations under color of law"), at 5 ("in violated acts that are in violation of the American people's with Disabilities Act and civil liberty rights of citizens lawful Healthcare treatment civil rights medical protections"), at 5-6 ("and the state of New Mexico due 4th amendment protections from unwarranted searches uses merely unfounded (A.P.S.) falsehoods"), at 6 ("plaintiff's as we're only just seeking healthcare services from hospitals that's plotting along violating the Constitutional amendment of equal protection under the law and in plain view is right and protection enforcement law Civil rights are upheld").

policy.  *See McDade v. Corizon Health*, No. 20-3042-SAC, 2021 WL 4745712, at *3 (D. Kan. Oct. 12, 2021), *appeal dismissed*, No. 21-3197, 2021 WL 8202422 (10th Cir. Dec. 14, 2021) (plaintiff failed to state a plausible claim against a private entity defendant under *Monell* because he did not "claim that any custom, practice, or . . . corporate policy caused a violation of his constitutional rights.").  This is fatal to any *Monell* claim Plaintiffs may be asserting against the City of Topeka or the Hospital Defendants.[10]

As far as the Court can discern, Plaintiffs' allegations regarding the Topeka Police Department and the Hospital Defendants involve individual hospital employees and staff, "Topeka Police Department officials" who were allegedly involved in involuntarily transferring Ms. White to Osawatomie State Mental Hospital, and Topeka Police Department "investigators" whose investigations purportedly violated "plaintiffs constitutionality protected Civil Rights."  ECF No. 10 at 4, 7 (spelling and capitalization original).  But in the amended complaint, Plaintiffs have not named as a defendant or otherwise identified any specific individual involved in any of the alleged events.

Even if Plaintiffs did name the individuals involved in their allegations, a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or

---

[10]       *See Taylor v. Pittsburg, KS. Police Dep't*, No. 22-3115-SAC, 2022 WL 2274123, at *3 (D. Kan. June 23, 2022) (the plaintiff's complaint was subject to dismissal because he "does not allege facts which plausibly show that an official action, policy or practice of a city or of the Sheriff of Crawford County caused the injuries he alleges in the complaint."); *Lomax v. City of Pittsburg, Kansas*, No. 16-2737-JAR-JPO, 2017 WL 590264, at *2 (D. Kan. Feb. 14, 2017) (the plaintiff's complaint was subject to dismissal because plaintiff failed to "allege any facts or allegations suggesting that an official custom or policy of the City . . . caused a violation of his rights."); *Frye v. City of Wichita, Kan.*, No. 6:13-CV-1433-EFM-GLR, 2014 WL 1116776, at *2 (D. Kan. Mar. 20, 2014) ("Plaintiff provides no allegations that the City made any policy, custom, or decision that infringed upon a federally protected right.  Plaintiff's conclusory allegations that his constitutional rights were violated are insufficient to establish a plausible claim that Defendant is liable under § 1983.  Therefore, the complaint must be dismissed . . . for failure to state a claim upon which relief can be granted.").

agents." *Monell*, 436 U.S. at 694; *Bruner-McMahon v. Hinshaw*, 846 F. Supp. 2d 1177, 1208 (D. Kan. 2012), *aff'd sub nom. Bruner-McMahon v. Jameson*, 566 F. App'x 628 (10th Cir. 2014) (local governmental entities "are not vicariously liable under Section 1983 for acts by employees."); *Sellers v. Butler*, No. CIV A 02-3055-DJW, 2006 WL 3230363, at *3 (D. Kan. Nov. 6, 2006) ("The United States Supreme Court has made it clear that 'respondeat superior or vicarious liability will not attach under § 1983.'" (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 123 (1992))). Additionally, the Hospital Defendants cannot be held liable "'*solely* because it employs a tortfeasor—or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Dubbs*, 336 F.3d at 1216 (quoting *Monell*, 436 U.S. at 691 (emphasis original)). Therefore, any potential *Monell* claim against the City of Topeka, or the Hospital Defendants fails.

## F.    Plaintiffs' State Law Claims

As explained above, the amended complaint has not plausibly alleged any discernable federal claim. Because Plaintiffs' federal claims are subject to dismissal, the Court must have an independent basis to continue to exercise jurisdiction over Plaintiffs' state law claims.

The amended complaint does not allege a factual basis to support diversity jurisdiction. "Diversity jurisdiction requires complete diversity—no plaintiff may be a citizen of the same state as any defendant." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015); *see also* 28 U.S.C. § 1332(a)(1) (requiring that the action be between "citizens of different States"). As far as the Court can discern, Plaintiffs are citizens of Kansas. *See* ECF No. 1 at 2. Plaintiffs do not allege the citizenship of the Hospital Defendants, but Plaintiffs continue to name the Department for Children and Families and the City of Topeka as Defendants, both of which are Kansas citizens. Therefore, complete diversity of citizenship is lacking.

Although the amended complaint does not invoke it, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over state law claims when the Court has original jurisdiction over other claims. But "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998); *see also Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138-39 (10th Cir. 2004) (explaining that the district court has discretion to decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it had original jurisdiction); 28 U.S.C. § 1332(c)(3) (stating that district courts may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction"). Indeed, courts routinely decline to exercise supplemental jurisdiction over state-law claims when federal claims do not survive screening.[11]

For all of these reasons, the Magistrate Judge recommends that the District Judge decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice.

---

[11] *See, e.g., Richmond v. Original Juan & Spicin Foods*, No. 21-2500-DDC-TJJ, 2022 WL 103290, at *3 n.2 (D. Kan. Jan. 11, 2022) (dismissing federal claims on screening and declining to exercise supplemental jurisdiction to the extent plaintiffs alleged plausible state law claims); *Pledger v. Russell*, No. 16-2770-JAR-GLR, 2016 WL 11185553, at *2 (D. Kan. Dec. 7, 2016) (same), *report and recommendation adopted*, No. 16-2770-JAR, 2017 WL 64977 (D. Kan. Jan. 6, 2017); *Tinner v. Foster*, No. 11-2695-EFM-KGG, 2012 WL 1473417, at *6 (D. Kan. Apr. 27, 2012) (same); *see also Drake v. Sometime Spouse, LLC*, 784 F. App'x 602, 605 (10th Cir. 2019) (finding that the district court did not abuse its discretion in refusing to exercise supplemental jurisdiction over plaintiff's state law claims when the federal claim had not survived screening).

## III.    CONCLUSION

For the reasons explained above, the Magistrate Judge recommends that the District Judge: (1) dismiss Plaintiffs' federal claims under 28 U.S.C. § 1915(e)(2)(B)(ii) because Plaintiffs' amended complaint does not state a claim upon which relief may be granted; and (2) decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice.

*        *        *

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and D. Kan. Rule 72.1.4(b), Plaintiffs may file written objections to this Report and Recommendation within fourteen days after being served with a copy.  If Plaintiffs fail to file objections within the fourteen-day time period, no appellate review of the factual and legal determinations in this report and recommendation will be allowed by any court.  *See In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

**IT IS FURTHER ORDERED** that the Clerk's Office mail this Report and Recommendation to Plaintiffs via certified U.S. Mail.

**IT IS SO ORDERED.**

Dated: October 2, 2023, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge

27